IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 23-cv-03099-PAB-SBP

SHAUN ALLEN CLARK,

     Plaintiff,

v.

TANNER J. CREIGHTON,
WILFRED EUROPE,
MEREDITH BLANTON,
ANTHONY ANDAZOLA,
ADAMS COUNTY SHERIFF'S DEPARTMENT,
ADAMS COUNTY DETENTION FACILITY, and
DORIS DEDIC,

     Defendants.

---

## ORDER

---

This matter comes before the Court on two motions to dismiss: Defendant Dedic's Motion to Dismiss Amended Complaint [Docket No. 97] and Adams County Defendants' Motion to Dismiss Plaintiff's Amended Complaint [ECF. 96] Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 98]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    BACKGROUND[1]

Plaintiff Shaun Allen Clark was incarcerated in the Adams County Detention

Facility ("ACDF" or "Detention Facility") on October 16, 2023, after being transferred to

the ACDF from a Colorado Department of Corrections facility on an "ISPI hold."  Docket

No. 96 at § II, ¶ 1; *id.* at § III, ¶ 1.  On that date, Mr. Clark asserts that he was subjected

to a strip search by "Defendants."  *Id.* at § III, ¶ 1.  Mr. Clark makes only one specific

allegation concerning the strip search: defendant Tanner Creighton, a deputy sheriff

with the Adams County Sheriff's Department who worked at the Detention Facility, "blew

a kiss at Plaintiff and ordered him to shake his testicles," which Mr. Clark characterizes

as "a clear act of sexual misconduct."  *Id.*

Mr. Clark attempted to report the incident to an unidentified person but was told

to "fuck off."  *Id.* at § III, ¶ 2.  He then used the Detention Facility's electronic kite system

to make a complaint pursuant to the Prison Rape Elimination Act, 34 U.S.C. § 30301 *et*

*seq.* ("PREA").  *Id.* at § III, ¶ 3.  According to Mr. Clark, Deputy Creigton himself, "[i]n

direct violation of PREA reporting polices," responded to the PREA complaint and

"dismiss[ed] it as 'unfounded' without an investigation."  *Id.* at § III, ¶ 4.  Weeks later, Mr.

Clark alleges that defendant Anthony Andazola, another deputy at the ACDF, was sent

to question Mr. Clark about his complaint, but this allegedly was done in "an intimidating

environment where plaintiff did not feel safe speaking openly."  *Id.* at § III, ¶ 5.  And

weeks after that, defendant Wilfred Europe, "who oversees [Deputies Creighton and

---

[1] The following facts are taken from the Amended Complaint, Docket No. 96, and
non-conclusory allegations are presumed to be true, unless otherwise noted, for
purposes of ruling on the motions to dismiss.

Andazola] and had previously come to Plaintiff's cell and threatened him"—Mr. Clark does not specify in what manner he had been threatened by Mr. Europe—took Mr. Clark "into a small room alone for questioning." *Id.* at § III, ¶ 6.  But, in light of the "prior threats," Mr. Clark "was terrified and unable to speak freely." *Id.*  "Defendants," as a group, "cut off all" other "means of reporting the sexual misconduct." *Id.* at § III, ¶ 7.

The Amended Complaint asserts that Mr. Clark sustained violations of his right to be free from cruel and unusual punishment under the Eighth Amendment, *id.* at § IV, ¶ 9 (Count I), and his procedural due process and equal protection rights under the Fourteenth Amendment.  *Id.* at § IV, ¶¶ 10-11 (Count II).  The Amended Complaint also seeks to bring a cause of action directly under PREA based on defendants' alleged "deliberate indifference" to the mandates imposed by that statute.  *Id.* at § IV, ¶ 12 (Count III).  The Amended Complaint does not differentiate among the conduct of each defendant for any of these claims, but rather raises each claim against all "Defendants," collectively.  *See generally id.* § IV.  As relief, Mr. Clark seeks compensatory damages, punitive damages, and injunctive and declaratory relief in multiple forms, including "full PREA compliance and external oversight at the [Detention Facility]." *Id.* at § V, ¶¶ 1-2.

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

A motion under Rule 12(b)(1) is a request for the court to dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A plaintiff bears the burden of establishing that the court has jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  When the court lacks subject matter jurisdiction over a claim

for relief, dismissal is proper under Rule 12(b)(1). *Jackson v. City and Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *1 (D. Colo. Sept. 24, 2012). As relevant here to one aspect of Ms. Dedic's motion to dismiss, the moving party may present a motion to dismiss under Rule 12(b)(1) by mounting a facial attack on the allegations in the complaint as to the existence of subject matter jurisdiction. *North Mill St., LLC v. City of Aspen*, 611 F. Supp. 3d 1141, 1144-45 (D. Colo. 2020), *aff'd on other grounds*, 6 F.4th 1216 (10th Cir. 2021).

### B.    Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v.*

4

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the plaintiff pleads factual content that, when taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). The court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

In applying these standards, the Court considers Mr. Clark's pro se status and thus affords his filings a liberal construction. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the Court cannot act as his advocate, *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019), and applies the same procedural rules and substantive law to Mr. Clark as to a represented party. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *see also Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1235 (D. Colo. 2012) ("*Pro se* status does not relieve Plaintiff of the duty to comply with various rules and procedures governing litigants and counsel, or the requirements of the substantive law and, in these regards, the Court will treat Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court.") (citations omitted).

### C.    Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A motion to dismiss based on qualified immunity creates a presumption of immunity from suit, *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) (citation omitted), and the burden shifts to the plaintiff to overcome this presumption.  *Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022).  To rebut an assertion of qualified immunity, "the plaintiff must meet a strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (internal quotation marks and citation omitted).  The pleading must plausibly allege "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *Id.* (citation omitted).

In considering the first prong of the qualified immunity analysis, whether the official has violated a constitutional right, the court assesses whether the evidence presented shows that the defendant personally participated in the alleged constitutional

violation.  That is because personal participation is an essential element of a civil rights claim against an individual under § 1983.  *See Iqbal*, 556 U.S. at 676 ("[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Cuervo v. Sorenson*, 112 F.4th 1307, 1313-14 (10th Cir. 2024) ("Section 1983 allows an individual to sue a government actor in his individual capacity for violating her constitutional rights and recover money damages from resulting injuries that *the actor caused by his violation*.") (emphasis added).  The court thus properly incorporates the personal participation requirement into the qualified immunity analysis.  *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) ("[A]lthough the requirement of personal participation, including the question of supervisory liability, is a component of liability under § 1983 and *Bivens,* we also incorporate it into our qualified-immunity analysis, where we ask whether a clearly established constitutional right has been violated.") (citing *Dodds v. Richardson*, 614 F.3d 1185, 1193-94 (10th Cir. 2010)).

As for the second prong of the qualified immunity inquiry, a right is clearly established if there is a Supreme Court or Tenth Circuit decision on point or if the weight of authority in other courts provides that the right is clearly established.  *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017).  While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Because the prior case must involve materially similar conduct or apply with obvious

clarity, qualified immunity generally protects all public officials except those who are 'plainly incompetent or those who knowingly violate the law.'" *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)).

## III.   ANALYSIS

### A.   Claims Against the Individual Defendants

The Court begins its analysis by examining the claims against the individuals Mr. Clark has sued: Doris Dedic, who is alleged to be a "C.D.O.C. Parole Office[r]," Docket No. 96 at 1,[2] and deputies Creighton, Blanton, Andazola, and Europe, who worked at the ACDF at the time of the strip-search incident.

### 1.   PREA Claim Against All Individual Defendants (Count III)

As an initial matter, in response to defendants' argument that the PREA claim must be dismissed, *see* Docket No. 98 at 8-9, Mr. Clark concedes that the "PREA does not provide a private right of action." Docket No. 106 at 1. Mr. Clark is correct. *See Johnson v. Garrison*, 859 F. App'x 863, 863-64 (10th Cir. 2021) (unpublished) ("To the extent [a prisoner's] due process claim is premised on processes afforded him under the PREA, the district court correctly concluded [the prisoner] has failed to show the PREA provides an inmate with a private right of action, enforceable under § 1983, to challenge that process."); *see also Bivens v. Blaike*, No. 21-cv-00783-PAB-NYW, 2022 WL 2158984, at *7 (D. Colo. June 15, 2022), *report and recommendation adopted*, 2022 WL 2716533 (D. Colo. July 13, 2022) ("[N]umerous district courts have concluded that

---

[2] Ms. Dedic does not dispute that she is a CDOC parole officer.

the [PREA] . . . does not create a private right of action in court.") (alternations in original) (internal quotation marks and citation omitted); *Wright v. Colorado Dep't of Corr. Denver Women Corr. Facility*, No. 20-cv-01840-LTB-GPG, 2020 WL 13357559, at *3 (D. Colo. Sept. 24, 2020), *report and recommendation adopted*, 2020 WL 13357560 (D. Colo. Oct. 20, 2020) (observing that "PREA does not create a private right of action," and finding that an inmate's PREA claim was "subject to dismissal as legally frivolous") (citations omitted).

Count III, in which Mr. Clark seeks relief directly under the PREA, therefore will be dismissed with prejudice because granting leave to amend that claim would be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citation omitted).

### 2.    Constitutional Claims Against Ms. Dedic

#### a.    Individual-Capacity Claims

Ms. Dedic, a CDOC parole officer, argues that she is entitled to qualified immunity on Mr. Clark's constitutional claims because Mr. Clark has not alleged that Ms. Dedic personally participated in any violation of his constitutional rights. Docket No. 97 at 5. As Ms. Dedic accurately states, "the Amended Complaint contains no factual allegations *at all*" concerning action she took with regard to Mr. Clark, and "[h]er name appears only in the caption, an introductory paragraph listing all defendants, and in the portion of the Amended Complaint listing the parties, but does not otherwise appear in the Amended Complaint or its attachments." *Id.*

9

In light of the absence in the Amended Complaint of any allegations regarding action taken by Ms. Dedic, Mr. Clark has failed to allege her personal participation in any constitutional violation. "Failure to make this showing both dooms [Mr. Clark's] § 1983 . . . claims and entitles [Ms. Dedic] to qualified immunity." *See Pahls*, 718 F.3d at 1228. In his response brief,[3] Mr. Clark attempts to rectify this pleading omission by stating that his "factual allegations . . . establish that Defendant Doris Dedic . . . had both supervisory authority and access to information about Plaintiff's treatment and safety concerns." Docket No. 106 at 2. However, these allegations are not contained in the Amended Complaint, Docket No. 96, and "courts may only consider the allegations made within the operative complaint when ruling on a motion to dismiss." *See Sgaggio v. Diaz*, No. 22-cv-02043-PAB-MDB, 2023 WL 6064599, at *4 (D. Colo. Sept. 18, 2023) (citing *Stratton v. United Launch All., L.L.C.*, No. 13-cv-01756-RBJ-KLM, 2014 WL 3644565, at *4 (D. Colo. July 23, 2014) ("On a 12(b)(6) motion to dismiss, the Court looks to the factual allegations made within the pleadings and not in other filings with the Court.") (citing *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.")); *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (explaining that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss").

---

[3] The magistrate judge allowed Mr. Clark to submit two responses to the motions to dismiss. *See* Docket Nos. 106, 111, 112. Defendants replied to the first response. *See* Docket Nos. 107, 108.

Even if the Court were to consider the new information in Mr. Clark's response, these conclusory allegations would not suffice to establish "an affirmative link" between Ms. Dedic and Mr. Clark's alleged constitutional injury. *See George v. Beaver Cnty.*, 32 F.4th 1246, 1255 (10th Cir. 2022) (internal quotation marks and citation omitted). His new assertions do not adequately allege that "(1) [Ms. Dedic] promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* (citation omitted). Nor could it rationally be supposed that a CDOC official like Ms. Dedic would possess control over policies—or employees—at a facility operated by a county. Thus, even if the Court considers this information as allegations, the Court finds that he has failed to plausibly allege any claim against Ms. Dedic based on her purported supervisory status.

Because Mr. Clark has not sufficiently alleged Ms. Dedic's personal participation in any constitutional violation, she is entitled to qualified immunity. All claims brought against Ms. Dedic in her individual capacity accordingly are dismissed with prejudice. *See Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (instructing the district court to dismiss claim on qualified immunity grounds "with prejudice"); *Chaney-Snell v. Young*, 98 F.4th 699, 710 (6th Cir. 2024) ("When qualified immunity bars a § 1983 claim, the court should dismiss the claim *with prejudice* to any later refiling.") (citation omitted).

### b. Official-Capacity Claim

Mr. Clark did not respond to Ms. Dedic's argument that the Eleventh Amendment bars any claim for damages against her in her official capacity. *See* Docket No. 97 at 3-

11

4; *see also generally* Docket No. 106.[4]  Assuming that the amended complaint contains such a claim, the Court agrees with Ms. Dedic that she is immune from liability.

"It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent."  *Hunt v. Colorado Dep't of Corr.*, 271 F. App'x 778, 780 (10th Cir. 2008) (unpublished) (citation omitted).  "State sovereign immunity is more than immunity from liability—it actually deprives federal courts of subject-matter jurisdiction."  *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011) (unpublished).

"State officials sued in their official capacity are considered arms of the state, and such suits are treated as suits against the state itself."  *Rueb v. Stancil*, No. 24-cv-03014-PAB-STV, 2025 WL 3478322, at *3 (D. Colo. Nov. 5, 2025), *report and recommendation adopted*, 2025 WL 3471931 (D. Colo. Dec. 3, 2025) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself)).  To the extent Ms. Dedic is being sued in her official capacity, she may "assert Eleventh Amendment immunity as an 'arm' of the state in that she assumes the identity of" the CDOC.  *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002); *see also*

---

[4] The Court does not construe Mr. Clark's pleading as attempting to seek prospective injunctive relief against Ms. Dedic in her official capacity as a CDOC official, nor would there be a logical basis for doing so where the alleged constitutional violations occurred while Mr. Clark was incarcerated in a county detention facility.

*Brackeen v. Brown*, No. 11-cv-01677-RBJ-KMT, 2013 WL 328937, at *4 (D. Colo. Jan. 8, 2013), *report and recommendation adopted*, 2013 WL 329007 (D. Colo. Jan. 29, 2013) ("Plaintiff's claims for monetary relief against the CDOC Defendants in their official capacities constitute claims against the Colorado Department of Corrections.") (citing *Will*, 491 U.S. at 71). The Eleventh Amendment therefore shields Ms. Dedic, acting in her official capacity, from any claim for monetary relief.

No exception to sovereign immunity applies here. *See Ruiz*, 299 F.3d at 1181 (recognizing "two primary circumstances in which a citizen may sue a state without offending Eleventh Amendment immunity": (1) Congress may abrogate a state's Eleventh Amendment immunity, or (2) a state may waive its sovereign immunity and consent to be sued). Congress did not abrogate the states' sovereign immunity when it enacted § 1983, *see id.*, and Mr. Clark does not allege that the State of Colorado has waived its immunity or consented to this suit. *See generally* Docket No. 96.

Accordingly, the Court finds that the Eleventh Amendment bars any official-capacity claim for damages against Ms. Dedic. Because the Court lacks subject matter jurisdiction over any such claim, it is dismissed without prejudice. *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) ("Because Eleventh Amendment immunity is jurisdictional, this dismissal should have been without prejudice.") (citations omitted).

### 3. Constitutional Claims Against the ACDF Deputies

Deputies Creighton, Blanton, Andazola, and Europe argue that they are entitled to qualified immunity on Mr. Clark's claims brought under the Eighth and Fourteenth Amendments. They contend that Mr. Clark's allegations do not suffice to plausibly show

13

that any of them violated his constitutional rights and, even if he had overcome the first prong of the two-part qualified immunity test, that he also has failed to demonstrate that their actions infringed upon a clearly established constitutional right.  *See* Docket No. 98 at 4-8, 9-11.  The Court agrees that Mr. Clark has not satisfied his burden to surmount the deputies' assertion of qualified immunity.[5]

### a.  Claims Against Deputy Blanton (Counts I and II)

The sole allegation in the Amended Complaint concerning Deputy Blanton is that she (and the other defendants) were "responsible for PREA compliance and failed to ensure a proper investigation."  Docket No. 96 at § II ¶ 2.  This conclusory assertion, unaccompanied by any factual specifics concerning Deputy Blanton's actions, is insufficient to plausibly demonstrate that she, by her "own individual actions," caused a violation of Mr. Clark's constitutional rights—an essential element of a § 1983 claim. *See Iqbal*, 556 U.S. at 676.  Mr. Clark's failure to allege Deputy Blanton's personal participation entitles her to qualified immunity on all claims brought against her under § 1983.  *Pahls*, 718 F.3d at 1228 (failure to allege personal participation entitles the defendant to qualified immunity).  Those claims accordingly will be dismissed with prejudice.  *Clark*, 625 F.3d at 692.

---

[5] The Court analyzes the claims against the deputies in their individual capacities.  While it is unclear from Mr. Clark's pleading whether he intends to sue the deputies in their official capacities, such claims would be considered a suit against their employer.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (holding that an official-capacity claim functions as a claim against the governmental entity itself). Mr. Clark's attempt to plead a *Monell* claim is addressed below.

### b.  Claims Against Creighton, Andazola, and Europe

### i.      Eighth Amendment Claims (Count I)

Deputy Creighton is the officer whose alleged conduct in connection with a strip

search—blowing a kiss at Mr. Clark and then telling him to shake his testicles, *see*

Docket No. 96 at § III, ¶ 1—was the impetus for this lawsuit.  Deputy Creighton's

conduct, which Mr. Clark characterizes as "sexual misconduct," is the basis for Mr.

Clark's Eighth Amendment conditions-of-confinement claim against Deputy Creighton,

as well as the other deputies.[6]  *Id.* at § IV, ¶ 9.  Mr. Clark also suggests that his Eighth

Amendment claim contains a failure-to-protect component, *see id.*, which the Court will

analyze separately.  The core of the claim, however, is that the deputies' actions

constituted "sexual abuse" and "sexual misconduct."  *Id.*

***Alleged sexual misconduct.*** "A prison official's 'deliberate indifference' to a

substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Farmer*

*v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted).  A prison official violates the

Eighth Amendment only when two requirements are met: (1) "the deprivation alleged

must be, objectively, 'sufficiently serious'"; and (2) the "prison official must have a

sufficiently culpable state of mind."  *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294,

297-98, 302-03 (1991)) (other citations omitted).  The deputies argue that Mr. Clark's

pleading does not satisfy either the objective or the subjective elements of an Eighth

---

[6] Because the Court has concluded that the claims against Deputy Blanton must
be dismissed on grounds that she did not participate in the alleged violations of Mr.
Clark's constitutional rights, the reference to "deputies" in this discussion means
Creighton, Andazola, and Europe.

Amendment claim.  *See* Docket No. 98 at 4-7.

With regard to the objective prong, the deputies contend that Mr. Clark has not alleged a sufficiently serious deprivation because "[t]here is not a single allegation that Deputy Creighton had even the briefest physical contact with Mr. Clark during the search on October 16, 2023" or that the deputy "made any threatening or violent remarks."  *Id.* at 5-6.  On the culpable-state-of-mind element, the deputies emphasize that Mr. Clark "does not make any allegation that he was raped or sexually assaulted and that the Individual Deputies knew and ignored it."  *Id.* at 6.  Indeed, as the deputies note, Mr. Clark declined to speak with both Deputies Andazola and Europe when they attempted to interview him after he made a PREA complaint.  *Id.* at 7; *see also* Docket No. 96 at

§ III, ¶¶ 5-6.

Mr. Clark makes no substantive counter to these arguments, including to refute the point that he was not touched by Deputy Crieghton and therefore sustained no physical injury attendant to the encounter.  Instead, Mr. Clark asserts that his "Amended Complaint alleges that he was subjected to sexual harassment, threats, retaliation and unsafe conditions while held in custody . . . at Adams County Detention Center."  Docket No. 106 at 2.  While an accurate characterization of Mr. Clark's pleading, the question is whether this allegation plausibly states a cause of action.  *See Iqbal*, 556 U.S. at 678 (a facially plausibly claim requires non-conclusory factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

16

The Court begins by observing that, as a general matter, the physical action

Deputy Creighton ordered Mr. Clark to take—shaking, or lifting, his testicles—is

consistent with the type of strip search the United States Supreme Court has held does

not offend the Constitution for a prisoner housed in the general population of a detention

facility.  In *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318,

324 (2012), the Court rejected the claim of a detainee, destined for the jail's general

population,[7] that he was subjected to an unreasonable search and seizure in violation of

the Fourth Amendment when he was obliged to undergo a strip search in which "he was

required to lift his genitals, turn around, and cough in a squatting position as part of the

process."  The Supreme Court determined that the search, albeit intrusive, was

warranted in light of the compelling security interests facilitated by strip searches,

emphasizing that "[t]he difficulties of operating a detention center must not be

underestimated by the courts," *id.* at 326 (citing *Turner v. Safley,* 482 U.S. 78, 84-85

(1987)), and that "correctional officials must be permitted to devise reasonable search

policies to detect and deter the possession of contraband in their facilities."  *Id.* (citing

*Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security and

preserving internal order and discipline are essential goals that may require limitation or

---

[7] Mr. Clark does not allege that he was housed elsewhere than in the general population at ACDF.  *See* Docket No. 96 at § II, ¶ 1 (alleging that, "at all relevant times," Clark was "incarcerated in Adams County Detention Facility under an ISPI hold, meaning he was ineligible for bond and remained in custody until the conclusion of his sentence"); *see also Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1237 (10th Cir. 2020) ("Under *Florence*, the jail could (1) decide that Hinkle 'will be' housed in the jail's general population, and (2) then strip search him before placing him in the general population.") (citing *Florence*, 566 U.S. at 322)).

retraction of retained constitutional rights of both convicted prisoners and pretrial detainees.")).

In this context, Mr. Clark has not alleged that the fact of his being required to undergo a strip search, that included a request to move his genitals, constituted a violation of his constitutional rights.[8]  The focus of the constitutional inquiry thus shifts to Deputy Creighton's allegedly having blown a kiss at Mr. Clark before asking him to shake his genitals.  If true, the Court finds that Deputy Creighton's inappropriate conduct does not transform his interaction with Mr. Clark to one that transgresses the line between constitutional and unconstitutional behavior.

The Tenth Circuit has emphasized that exclusively nonphysical harassment, even of a sexual nature, is not of objectively sufficient seriousness to implicate the Eighth Amendment.  *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998) (observing that, although inmates alleged "severe verbal sexual harassment and intimidation, these acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment").  "[C]laims of verbal harassment are *only* actionable in combination with" physical contact by the alleged harasser.  *Id.* (internal quotations marks, alternation, and citation omitted); *see also Adkins v. Rodriguez*, 59 F.3d 1034,

---

[8] At least one court has concluded that there is no constitutional violation even when the officer touches the inmate during the search.  *Williams v. Melvin*, No. 23-cv-12868, 2024 WL 310185, at *3 (E.D. Mich. Jan. 26, 2024) ("In this case, [an inmate's] sole allegation that [a correctional officer] lifted his testicles and ordered him to bend over and spread during a brief, isolated strip-search does not meet Eighth Amendment standards.").

18

1037 (10th Cir. 1995) (rejecting argument that a comment to a female prisoner that she had "nice breasts," unaccompanied by any physical contact, violated the Eighth Amendment, and declining to "infuse defendant's words of sexual harassment with the sort of violence or threats of violence cognizable in the conditions of confinement cases the [Supreme] Court has addressed") (citation omitted).

Here, although Deputy Creighton's conduct—crediting Mr. Clark's characterization of it—was inappropriate and unprofessional, Mr. Clark has not alleged that he was subjected to anything more than a taunt. Longstanding Tenth Circuit precedent places such conduct outside the purview of the Eighth Amendment. *See, e.g.*, *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse of the sort alleged in this case [i.e., sheriff threatened to hang prisoner following prisoner's request to mail some legal correspondence] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."); *see also Smith v. Trapp*, 2018 WL 587230, at *2, *5 (D. Kan. Jan. 29, 2018) (holding that "entirely verbal" conduct in the context of a strip search in which a corrections officer directed an inmate not to cover his genitals and responded "because I can" when questioned, and "licked his lips, smiled, and grabbed his own crotch," was not "objectively serious enough to constitute an Eighth Amendment violation"). Courts throughout the country have similarly rejected the extension of the protection of the Eighth Amendment to non-physical verbal harassment of the type Mr. Clark complains

19

of here.  *See Williams v. Frank*, 2024 WL 3579388, at *3, *6 (W.D. Mich. July 29, 2024)

(finding that a correctional officer's conduct, including a comment to an inmate asking

whether the officer "looked and smelled good" and brushing his hand against the

inmate's penis, "while disturbing, do[es] not rise to the level of an Eighth Amendment

violation"); *Koenig v. White*, 2020 WL 13802766, at *4 (D. Haw. Oct. 19, 2020) (finding

no violation of the Eighth Amendment based on a statement by a correctional officer

asking two inmates, "what are you two faggots doing making out?").[9]

Mr. Clark alleges, at most, what may be construed as one instance of verbal

sexual harassment that does not plausibly evince the existence of a substantial risk of

serious harm to him.  Deputy Creighton is therefore entitled to qualified immunity on this

aspect of Mr. Clark's Eighth Amendment claim, as are the other deputies, who are not

alleged to have personally participated in the strip search.  *See Pahls*, 718 F.3d at 1228

(failure to show personal participation "dooms" a § 1983 claim and entitles the non-

participant to qualified immunity under the first prong of the analysis).

The Court also finds that there are no well-pleaded facts that plausibly indicate

---

[9] *See also, e.g.*, *Trowell v. Theodarakis*, 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (allegation that correctional officer had called the plaintiff "derogatory names based on [plaintiff's] sexual orientation" did not state claim of sexual abuse under the Eighth Amendment); *Keaton v. Ponte*, 2017 WL 3382314, at *10 (S.D.N.Y. Aug. 4, 2017) (dismissing prisoner's Eighth Amendment claims of sexual abuse against female corrections officers where there were no allegations of physical contact but only "verbal harassment" in the form of encouraging the inmate to use the shower, watching him shower, and making "sexual gestures" toward the inmate with the officers' lipsticks and tongues); *Wherry v. Gunter*, 2016 WL 3676796, at *3 (W.D. Okla. July 6, 2016) (finding that derogatory comments to an inmate, including saying "Itsy Bitsy Teeny Weeny" in the inmate's presence, was the "type of limited commentary by prison guards to prisoners [that] has been found not to be objectively sufficiently serious, when unaccompanied by physical conduct, to give rise to an Eighth Amendment violation").

the existence of any other actions, by any deputy, that placed Mr. Clark at substantial risk of serious harm.  Mr. Clark asserts that he had been "threatened" and was "terrified" after the encounter with Deputy Creighton, Docket No. 96 at § IIII, ¶ 6, but he alleges no factual support for these conclusory statements that would reasonably suggest the existence of a genuine threat to him or any plausible justification for his being "terrified." Allegations like these, which do no more than "state[] an inference without stating underlying facts or [are] devoid of any factual enhancement," *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021), are not entitled to the assumption of truth.  *Iqbal*, 556 U.S. at 679.  By contrast, what Mr. Clark does allege with factual specificity is that Deputies Andazola and Europe both sought to speak with him in connection with the investigation of his PREA grievance, but Mr. Clark refused to "speak openly" with either of them.  *See* Docket No. 96 at § III, ¶¶ 5-6.

Mr. Clark's pleading thus is bereft of facts sufficient to allow the Court to infer that he faced a substantial risk of serious harm, either during the strip-search incident or after it.  *See Iqbal*, 556 U.S. at 678.  Because Mr. Clark has not carried his burden on the first prong of the qualified immunity analysis, each deputy is entitled to qualified immunity on any Eighth Amendment conditions-of-confinement claim based on alleged sexual abuse or misconduct.  The Court therefore does not address the second prong of the qualified immunity inquiry.  *See Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir. 2025) ("[I]f the plaintiff fails to satisfy either prong [of the qualified immunity inquiry], a court must grant qualified immunity.") (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

21

***Alleged failure to protect.***  The Court finds that Mr. Clark also fails to state a viable claim for relief on a failure-to-protect theory.  *See* Docket No. 96 at 2 (asserting that defendants "fail[ed] to protect Plaintiff from sexual abuse").

To pursue a failure-to-protect claim, Mr. Clark was required to allege facts sufficient to establish the same objective and subjective elements as his sexual abuse claim.  "To prevail on a failure-to-protect claim, an inmate must show (1) that the conditions of his incarceration present an objective substantial risk of serious harm and (2) prison officials had subjective knowledge of the risk of harm, in other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Requena*, 893 F.3d at 1214 (internal quotation marks and citation omitted).  As to the failure-to-protect component of Mr. Clark's Eighth Amendment claim, the Amended Complaint again falls short on both elements.

From Mr. Clark's pleading, it is unclear what "substantial risk of serious harm" Mr. Clark believes that any of the deputies failed to protect him from. Insofar as he may seek to tie his failure-to-protect claim back to the actions of Deputy Creighton, as already explained, the alleged harm attendant on that interaction does not rise to the level of a constitutional violation.  Nothing about Mr. Clark's encounter with Deputy Creighton plausibly demonstrates that this single instance of non-physical harassment posed a substantial risk of serious harm to Mr. Clark's health or safety.  Nor does Mr. Clark's pleading plausibly suggest that any deputy would have known that he faced any other risk of harm, substantial or otherwise, or how any action (or inaction) on their part

22

precipitated a risk of serious harm to plaintiff.  The fundamental problem in Mr. Clark's

pleading is that he has failed to allege that he sustained any cognizable constitutional

injury from which the deputies should have protected him.  *See Spivey v. Cooley*, 2023

WL 9417919, at *3 (W.D. La. Dec. 18, 2023), *report and recommendation adopted*,

2024 WL 289357 (W.D. La. Jan. 24, 2024) (finding that "the dismissal of an inmate's

failure-to-protect claim is warranted, even as frivolous, when no harm or injury has been

suffered as a result of the defendants' conduct") (collecting cases).

Insofar as Mr. Clark's claim rests on his assertion that he was "forced to live in

fear for six months, knowing that Defendants had complete control over his confinement

and could retaliate further," Docket No. 96 at § III, ¶ 8, that also does not suffice to

plausibly establish the requisite harm.  "[I]n a failure to protect claim, it is the failure to

protect from actual physical injury, *not the failure to protect from the fear of injury*, that

violates the [constitution]."  *Plaza v. Lancaster Cnty. Commissioners*, 2025 WL 408682,

at *6 (E.D. Pa. Feb. 5, 2025) (citation omitted) (emphasis added); *see also id.*

(recognizing that "[f]ailure to protect from acts of verbal harassment and taunting alone

cannot qualify as constitutional violations") (internal quotation marks and citation

omitted).  Put otherwise, the mere apprehension of harm does not qualify as a

substantial risk of serious harm so as to allow Mr. Clark to state a plausible failure-to-

protect claim.  *See, e.g.*, *Sorensen v. Roark*, No. 22-cv-02322-SKC-TPO, 2025 WL

3251142, at *3 (D. Colo. Nov. 21, 2025) ("However, '[b]eing subjected to the *mere*

*possibility* of assault from another inmate does not satisfy the objective component of an

Eighth Amendment violation.'") (quoting *Williams v. Daniels*, No. 14-cv-00705-CBS,

2014 WL 5152359, at *3 (D. Colo. Oct. 14, 2014) (emphasis added)); *Luckey v. Martin*,

2012 WL 665694, at *6 (D.N.J. Feb. 29, 2012) (dismissing a "speculative" failure-to-

protect claim, because "even assuming that Plaintiff was experiencing anxiety and

believed that he might be in danger, his own subjective[ ] fears cannot serve as a basis

for a valid constitutional claim"); *Hernandez v. Schriro*, 2011 WL 2910710, at *6 (D. Ariz.

July 20, 2011) ("While theoretical risk is always possible, *Farmer* [*v. Brennan*] requires

more—'conditions posing a substantial risk of serious harm.'") (citation omitted).

To have incurred an obligation under the Constitution to protect Mr. Clark, the

deputies must have been aware of more than some theoretical threat of harm because

"an idle threat of impending physical harm that is not carried out will not suffice to state

an Eighth Amendment claim." *See Harris v. Matthews*, 417 F. App'x 758, 763 (10th Cir.

2011) (unpublished). Mr. Clark has not alleged that he actually faced a concrete risk of

serious harm, much less that the deputies possessed subjective awareness of that risk.

Each deputy therefore is entitled to qualified immunity on the failure-to-protect

component of Mr. Clark's Eighth Amendment claim and, thus, on his Eighth Amendment

claim in its entirety. The Court therefore will dismiss the Eighth Amendment claim

against Deputies Creigton, Andazola, and Europe with prejudice. *Clark*, 625 F.3d at

692.[10]

---

[10] Under the heading for his Eighth Amendment claim, Mr. Clark asserts that he was "[r]etaliat[ed] against . . . for reporting the misconduct, creating a hostile and threatening environment." Docket No. 96 at § IV, ¶ 9. Mr. Clark does not explicitly state that he is attempting to bring a First Amendment retaliation claim, but if he is, his pleading is inadequate to allege such a claim. *See Requena*, 893 F.3d at 1211 ("Government retaliation against a plaintiff for exercising his or her First Amendment

24

**ii. Due Process/Equal Protection Claims (Count II)**

The Court construes Mr. Clark's due process and equal protection claims as

asserting that Mr. Clark's due process and equal protection rights were violated by the

mishandling by the ACDF—and, in particular, by the deputies—of his internal grievance

concerning his PREA complaint.  Mr. Clark asserts that the deputies failed to provide

him with the processes mandated by the PREA.  Docket No. 96 at § IV, ¶¶ 10, 11

(alleging that Clark was denied due process because he "was not provided with an

impartial investigation" as required by PREA and that he had no effective mechanism

within the facility by which to "report his abuse" because he was "intimidated" by the

deputies); *id.* at § IV, ¶ 11 (alleging that Clark's equal protection rights were violated

when he "was denied access to the same reporting safeguards afforded to other

inmates under federal law").  These claims essentially repackage Mr. Clark's PREA

claim, which he cannot pursue directly under that statute, and fare no better when

clothed in constitutional garb.

---

rights may be shown by proving the following elements: (1) that the plaintiff was
engaged in constitutionally protected activity; (2) that the defendant's actions caused
the plaintiff to suffer an injury that would chill a person of ordinary firmness from
continuing to engage in that activity; and (3) that the defendant's adverse action was
substantially motivated as a response to the plaintiff's exercise of constitutionally
protected conduct.") (quoting *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir.
2007)).  At a minimum, Mr. Clark's allegations do not satisfy the second, injury element.
As the Court has explained above, Mr. Clark has not alleged that he sustained any
injury at all, let alone one of constitutional magnitude, following the submission of his
PREA complaint.  Nor do the well-pleaded facts support his conclusory characterization
of his living environment, in the post-PREA period of his incarceration, as "hostile" or
"threatening." Mr. Clark's pleading therefore devolves to "[m]ere allegations of
retaliation," which "without more, are insufficient to show a retaliatory motive." *See
Sherratt v. Utah Dep't of Corrections*, 545 F. App'x 744, 747 (10th Cir. 2013)
(unpublished) (citation omitted).

***Procedural due process.*** To state a plausible procedural due process claim, Mr.

Clark "must allege a deprivation of a protected property or liberty interest." *Niknam v.*

*United States Dep't of State*, No. 23-cv-01380-PAB-SBP, 2024 WL 709636, at *5 (D.

Colo. Feb. 21, 2024) (citing *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007)).

Here, the claim hinges on what Mr. Clark deems to have been an ineffective prison

grievance procedure by which he was obliged to submit "a PREA complaint through the

jail's electronic kite system." *See* Docket No. 96 at § III, ¶ 3. That claim fails as a

matter of law.

"As far as prison regulations go, state-created liberty interests protected by the

Fourteenth Amendment are 'limited to freedom from restraint' that 'imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life.'"

*Henderson v. Fisher*, 767 F. App'x 670, 675 (10th Cir. 2019) (unpublished) (quoting

*Sandin v. Conner*, 515 U.S. 472, 484 (1995)). No such restraint is implicated by an

inmate's alleged inability to use a voluntarily-created prison grievance procedure, as the

Tenth Circuit repeatedly has confirmed. *See, e.g.*, *id.* ("[A]s we have explained before,

prisoners have no liberty interest in prison grievance procedures") (quoting *Todd v.*

*Bigelow*, 497 F. App'x 839, 842 (10th Cir. 2012) (unpublished) (citing *Johnson v.*

*Richins*, 438 F. App'x 647, 649 (10th Cir. 2011) (unpublished) (an inmate's "claim that [a

prison official] mishandled his grievances does not implicate any due-process rights"));

*Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished) (in a case

alleging deprivation of access to a state prison grievance process, holding that "there is

no independent constitutional right to state administrative grievance procedures"); *Von*

*Hallcy v. Clements*, 519 F. App'x 521, 523 (10th Cir. 2013) (unpublished) (state prisoner

"cannot state a due process claim based on allegations of an ineffective grievance

reporting system").[11]  The fact that Mr. Clark's complaint involves a PREA allegation

does not alter the conclusion that there is no liberty interest in play.  *See Camacho v.*

*DuBois*, 2022 WL 17807433, at *6 (S.D.N.Y. Dec. 19, 2022) (a prisoner "does not have

a cognizable liberty interest in the handling of his grievance . . . and the fact that [his]

grievance involved PREA does not change this result"); *Bracy v. Tully*, 2022 WL

3229325, at *4 (E.D. Va. Aug. 10, 2022) ("To the extent Bracy challenges the quality of

the investigation into his PREA complaint, he has no freestanding constitutional right to

such an investigation under § 1983.") (citation omitted).[12]

In response to the motions to dismiss, Mr. Clark asserts that he "possesses

substantial evidence" showing that staff at the ACDF "deliberately attempted to conceal

or suppress" his "PREA-related complaints, safety concerns and requests for help."

Docket No. 106 at 2; Docket No. 106-1 at 1, ¶¶ 4-6 (declaration in which Clark avers

that he submitted "PREA-related complaints" in multiple forms while incarcerated at

ACDF).  Even if Mr. Clark were allowed to amend his pleading in response to a motion

---

[11] It appears that Mr. Clark's PREA complaint was reviewed by ACDF, but Mr. Clark declined to speak with Deputies Andazola and Europe when they attempted to interview him.  *See* Docket No. 96 at § III, ¶¶ 5-6.

[12] *See also Rose v. Anderton*, 2024 WL 4542677, at *6 (S.D. Ill. Oct. 22, 2024) ("[T]here is no constitutional right to a PREA investigation under § 1983.") (citations omitted); *Grady v. Rogers*, 2022 WL 193014, at *8 (W.D.N.C. Jan. 20, 2022) ("[T]here is no right to have an investigation conducted by the government, including a PREA investigation.") (citations omitted); *Jackson v. Wicking*, 2020 WL 6874963, at *2 (M.D. Tenn. Nov. 23, 2020) (holding that a prisoner "simply has no constitutional right to compel a proper investigation of his PREA complaint . . . or even to have that complaint investigated at all") (citations omitted).

to dismiss, his new contentions would not alter the fundamental defect in his due process claim: he has no constitutionally protected liberty interest in the utilization of these procedures in the first instance.

In sum, Mr. Clark has alleged no legally cognizable restraint on his liberty associated with his dissatisfaction with the investigation of his PREA complaint at ACDF, including Deputy Creighton's participation in that process and the supposedly intimidating manner in which Deputies Andazola and Europe sought to question Mr. Clark.  *See* Docket No. 96 at § III, ¶¶ 5-6; *see also Henderson*, 767 F. App'x at 675 (finding no restraint sufficient to implicate a liberty interest where an inmate's argument was that "he was denied due process when his prison grievances did not lead to a new [opioid pain reliever] prescription").  Mr. Clark thus has failed to overcome the first prong of his burden on the qualified immunity inquiry regarding his procedural due process claim, and Deputies Creighton, Andazola, and Europe will be granted qualified immunity on that basis.

***Substantive due process.*** To the extent Mr. Clark may also be attempting to raise a substantive due process claim, which his pleading does not explicitly state, he likewise fails to state a viable claim.

"The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges."  *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (internal quotation marks and citation omitted).  "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points

28

clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). "Conduct that shocks the judicial conscience . . . is deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (quoting *Lewis*, 523 U.S. at 846).

In assessing the plausibility of Mr. Clark's claim, this Court is further bound by Tenth Circuit precedent holding that, "[t]o show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or 'employ[ed] it as an instrument of oppression.'" *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (quoting *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008)). The Court also must scrutinize Mr. Clark's allegations pursuant to the principles that "[t]he behavior complained of must be egregious and outrageous," and that substantive due process prohibits "only the most egregious official conduct." *Id.* (citations omitted). Put simply, Mr. Clark's allegations must plausibly "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder,* 64 F.3d 567, 574 (10th Cir. 1995). Mr. Clark's pleading does not satisfy these standards.

Mr. Clark asserts that "[h]e was subjected to intimidation by the very officers responsible for protecting him, rendering him unable to effectively report his abuse." Docket No. 96 at § IV, ¶ 10. A generous construction of Mr. Clark's pleading suggests that the "intimidation" he claims was that Deputy Creighton was asked to weigh in on

the PREA complaint, and that Mr. Clark "did not feel safe speaking openly" when Deputies Andazola and Europe tried to interview him because they had previously subjected him to some unspecified "threatening" conduct.  *Id.* at § III, ¶¶ 4-6.  These allegations do not plausibly establish the existence of conduct that remotely approaches the level of egregious or outrageous. Importantly, when the Court "attempt[s] to discern whether alleged conduct is conscience-shocking," it "must be mindful that 'the Due Process Clause is not a guarantee against incorrect or ill-advised government decisions.'"  *Hernandez*, 734 F.3d at 1261 (quoting *Uhlrig*, 64 F.3d at 573).  Here, the well-pleaded facts do not plausibly show that the deputies' manner of responding to his PREA complaint, and attempting to investigate it, was even "incorrect or ill-advised"— much less "conscience-shocking."

Exercising, as directed by the Tenth Circuit, "restraint in defining [the] scope" of substantive due process claims, mindful of "the concern that § 1983 not replace state tort law," and cognizant of "the need for deference to local policymaking bodies in making decisions impacting upon public safety," *Uhlrig*, 64 F.3d at 573, the Court finds that Mr. Clark has failed to plead a plausible substantive due process claim. Accordingly, Deputies Creighton, Andazola, and Europe are entitled to qualified immunity on any such claim Mr. Clark may be attempting to raise.

**Equal protection.** Mr. Clark complains that the deficiencies in the PREA complaint and investigation process "also violated equal protection under the law," specifically in that he "was denied access to the same reporting safeguards afforded to other inmates under federal law."  Docket No. 96 at § IV, ¶ 11.

The Court observes that there is no essential difference between Mr. Clark's "equal protection" claim and the one he pursues under the "due process" label, both of which rest on the premise that the deputies failed to implement the appropriate procedures to allow for a full investigation of his PREA complaint. The Court has determined that Mr. Clark states no plausible claim for relief when those allegations are packaged as a due process claim. Nevertheless, the Court will address Mr. Clark's attempt to rebrand his challenge to the PREA complaint process as an equal protection claim.

Mr. Clark asserts that he is alone among a broad group of unidentified "other inmates" in having been denied PREA "reporting safeguards." Docket No. 96 at § IV, ¶ 11. It therefore appears he is advancing a "class of one" equal protection claim. Such a claim rests on the view that the plaintiff has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citation omitted). To state a viable claim under the Equal Protection Clause of the Fourteenth Amendment, Mr. Clark "must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]." *Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (quoting *Barney*, 143 F.3d at 1312). "This element is especially important in class-of-one cases." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004) (citations omitted); *see also Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1213 (10th Cir. 2006) ("[C]ourts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one

31

cases.").  To satisfy it, Mr. Clark must allege that others similarly situated to him "in
*every material respect*" were treated differently.  *Kansas Penn Gaming, LLC v. Collins*,
656 F.3d 1210, 1216 (10th Cir. 2011) (emphasis added) (quotation omitted); *see also*
*Jennings*, 383 F.3d at 1214 ("It is . . . imperative for the class-of-one plaintiff to provide a
specific and detailed account of the nature of the preferred treatment of the favored
class.").

Mr. Clark fails to allege facts sufficient to make this threshold showing. His sole
allegation of unequal treatment is that "other inmates" received PREA "reporting
safeguards" that he did not, Docket No. 96 at § IV, ¶ 11, and he does not identify by
name a single "other inmate" who was incarcerated in the ACDF who received these
protections, what safeguards another inmate received that were denied to him, or when
this supposed difference in treatment occurred.  "[A]fter *Twombly* and *Iqbal*, it is
insufficient to simply allege that other, unidentified" inmates are in a "comparable" or
"similar" situation; "the claim must be supported by specific facts plausibly suggesting"
the "other inmates" are "similar in all material respects" to Mr. Clark.  *See Kansas Penn*
*Gaming*, 656 F.3d at 1220.  Because Mr. Clark's conclusory allegation fails to plausibly
demonstrate that the "other inmates" with whom he compares himself were similarly
situated to him "in every material respect," *see id.* at 1216, his equal protection claim
fails.  *See Melnick v. Williams*, No. 21-cv-01695-CNS-KLM, 2022 WL 4545749, at *3 (D.
Colo. Sept. 29, 2022) (dismissing Fourteenth Amendment equal protection claim with
prejudice where "Plaintiff asserts a class-of-one equal protection claim by claiming that
she knows of other transgender women at the Denver Women's Correctional Facility

and that she has not received the same treatment that the other transgender women have received," but failed to "allege specific or detailed characteristics of the other transgender women that would make them similar to her"); *Jones v. City & Cnty. of Denver*, No. 21-cv-00728-LTB-GPG, 2021 WL 11636827, at *3 (D. Colo. July 8, 2021) ("Mr. Jones fails to allege specific facts to show that he was treated differently from any other inmate with whom he was similarly-situated. Instead, he relies on conclusory allegations of disparate treatment which are insufficient to show an entitlement to relief under § 1983.").

Mr. Clark has come forward with nothing more than a bald assertion that unknown others were treated in a dissimilar manner. His failure to plausibly allege that he sustained a violation of his equal protection rights requires a finding that Deputies Creighton, Andazola, and Europe are entitled to qualified immunity and the dismissal of the equal protection claim with prejudice. *Clark*, 625 F.3d at 692.

Consistent with the foregoing analysis, all claims against Ms. Dedic and all of the deputies will be dismissed.

### B.    Claims Against the ACDF and the Sheriff's Department

Defendants argue that the Detention Facility "is not a juridical entity subject to suit" and that "the County Sheriff, in his official capacity"—not the Adams County Sheriff's Department—"is the proper defendant in actions arising out [of] the actions of sheriff's deputies." Docket No. 98 at 11-13. Mr. Clark offers no rejoinder to these arguments, and the Tenth Circuit has long confirmed them to be accurate expressions of the law. *See, e.g.*, *Reyes v. McDonald's Corp. of Illinois*, No. 24-1211, 2024 WL

4040385, at *3 n.5 (10th Cir. Sept. 4, 2024) ("Reyes names as defendant the Fort

Collins Police Department, not the Fort Collins municipality. But the police department

'is not a separate suable entity' under § 1983.") (quoting *Martinez v. Winner*, 771 F.2d

424, 444 (10th Cir. 1985)); *Stone v. Jefferson Cnty. Det. Facility*, 838 F. App'x 348, 350

(10th Cir. 2020) (unpublished) (holding that detention facilities and sheriffs' departments

are not suable under § 1983).

Accordingly, the Court dismisses with prejudice any claims against the ACDF

and the Adams County Sheriff's Department.  *See, e.g.*, *Sarnella v. Kuhns*, No. 18-cv-

00779-PAB-NYW, 2019 WL 1112388, at *4 (D. Colo. Mar. 8, 2019) (dismissing a

sheriff's department with prejudice as a non-suable entity).  In so doing, the Court

observes that, even if it construed these claims as having been brought against Adams

County as a municipality, they would fail nevertheless.

"[A] municipality may not be held liable under § 1983 solely because it employs a

tortfeasor."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).

Government entities can be sued directly only where "the action that is alleged to be

unconstitutional implements or executes a policy statement, ordinance, regulation, or

decision officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at

690.  "[I]t is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury that the government as an entity is responsible under § 1983."

*Id.* at 694.  And so to successfully plead a municipal liability claim, a plaintiff must allege

facts plausibly showing that "(1) an official policy or custom (2) caused the plaintiff's

34

constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring." *George*, 32 F.4th at 1253.

Here, Mr. Clark's pleading is devoid of allegations plausibly suggesting the existence of any unconstitutional "policy statement, ordinance, regulation, or decision" promulgated by Adams County officers. *See generally* Docket No. 96. Additionally, for the reasons the Court has already explained, Mr. Clark has failed to plausibly allege that any deputy violated his constitutional rights. That pleading omission further compels the conclusion that Mr. Clark's allegations likewise would not suffice to allege a plausible claim against a proper municipal defendant under *Monell*. *Monell*, 436 U.S. at 694; *see also Sgaggio*, 2023 WL 6064599, at *6 ("[T]he Court finds that Mr. Sgaggio has failed to plausibly allege a constitutional violation by Detective Diaz. Therefore, Mr. Sgaggio has also failed to plausibly allege a claim against the City of Pueblo under *Monell*."). Consequently, even if Mr. Clark's pleading were generously construed as having raised a *Monell* claim against a municipal entity subject to suit, that claim would be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Dedic's Motion to Dismiss Amended Complaint (ECF No. 96) [Docket No. 97] is **GRANTED**. It is further

**ORDERED** that Adams County Defendants' Motion to Dismiss Plaintiff's Amended Complaint [ECF. 96] Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 98] is **GRANTED**. It is further

**ORDERED** that all claims against defendant Adams County Detention Facility
and defendant Adams County Sheriff's Department are dismissed with prejudice.  It is
further

**ORDERED** that the constitutional claims under 42 U.S.C. § 1983 against
defendants Tanner J. Creighton, Wilfred Europe, Marilyn Blanton, Anthony Andazola,
and Doris Dedic are dismissed with prejudice.  It is further

**ORDERED** that all other claims against defendant Doris Dedic are dismissed
without prejudice for lack of jurisdiction.  It is further

**ORDERED** that Plaintiff's Motion to Introduce Evidence of Severe Traumatic
Brain Injury [Docket No. 118], Plaintiff's Renewed Motion for Appointment of Counsel,
[Docket No. 121], Plaintiff's Motion for Status Conference [Docket No. 122], and
Plaintiff's Motion for Judicial Notice and Consideration of ADA Evidence [Docket No.
123] are **DENIED as moot**.  It is further

**ORDERED** that this case is closed.

DATED: March 30, 2026

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge